## LENOIR CITY v. W. C. ELLISON.

Eastern Section.   December 7, 1928.

Petition for Certiorari denied by Supreme Court, February 23, 1929.

Breazeale & Breageale, of Loudon, and Smith, Carlock & Poore, of Knoxville, for appellant.

J. F. Littleton, of Kingston, and Horace M. Carr, of Harriman, for appellee.

THOMPSON, J.   The complainant, Lenoir City, filed the bill in this cause against the defendant, W. C. Ellison, to recover and fix as a lien on abutting property, owned by said Ellison, an assessment of $394.53, and interest, $48.76,—said property being in Improvement District No. 3 of Lenoir City, and abutting on Broadway street, the street upon which the improvements were made.

The creation of Improvement District No. 3, the making of the improvements, the assessment of the taxes, and the entire procedure

taken by the city, were under and pursuant to the provisions of chapter 18 of the Acts of 1913 (first extra session).

Upon the final hearing the Chancellor dismissed complainant's bill at its cost upon the ground that the legislative body of the complainant, city, had not by ordinance or resolution apportioned and assessed two-thirds of the cost of the improvements upon the abutting property as required by sections 4 and 6 of said Act of 1913. In other words, he found that the record failed to show that the city had done the things and taken the steps required and made necessary by said two sections of said Act of 1913. The city has appealed and assigned errors.

Said sections are as follows:

"Sec. 4. Be it further enacted, that after the completion of the work or improvement, it shall be the duty of said legislative body, in conformity with the requirements of said ordinance, to apportion two-thirds of the cost of such improvements upon the land abutting on or adjacent to said street, highway, avenue, alley, or other public place, which apportionment shall be made against said land, and the several lots or parcels thereof, according to the frontage of said lots or parcels on said street, highway, avenue or alley; provided, however, that the aggregate or total amount of the levy or assessment made upon or against any lot or parcel of land shall not exceed one-half of the assessed value of said lot for municipal taxes for the current year; and the city or town shall pay any part of such levy or assessment upon or against any such lot or parcel of land as may be in excess of one-half of said assessed value thereof.

"Where intersections of any street, avenue, or other highway are improved, the municipality shall pay one-third of the cost thereof, and the balance shall be assessed against the property of the street improved and the intersecting street or streets for one-half a block in all directions according to the frontage thereof; provided, however, that the cost to be assessed against railways having tracks within such intersections shall be deducted from the cost of such intersections to be paid by the municipality and property owners. The cost of any improvement contemplated in this Act shall include the expense of the preliminary and other surveys, and the inspection and superintendence of such work, the preparation of plans and specifications, the printing and publishing of notices, resolutions, and ordinances required, including notice of assessment, preparing bonds, interest on bonds, and any other expense necessary for the completion of such improvement; provided, however, that the cost of any guaranty or maintenance of any work constructed under the terms of this Act shall not be assessed against the property abutting on or adjacent to street or streets improved.

"Sec. 6. Be it further enacted, That when said legislative body shall have completed such apportionment, the city clerk, or such per-

son as may be designated by the legislative body of said city, shall thereupon publish a notice that said assessment list has been completed, and that on a day named, which shall be not less than ten days after the date of publication of said notice, the city council will consider any and all objections to said apportionment that have been filed in the office of said city clerk or person designated. Said notice shall further recite that said lists are in the office of said city clerk or person designated, and may be inspected within business hours and during the time specified by any one interested. Said notice shall also state the general character of the improvement and the terminal points thereof. All persons whose property it is proposed to assess for the cost of said improvement may at any time on or before the date named in such notice, and before said meeting of said legislative body, file in writing with the city clerk or person designated any objections of defense to the proposed assessment or to the amount thereof. On the date named in said notice, or at any day to which said meeting may be adjourned or to which consideration of said assessments and the objections thereto may be postponed, said legislative body shall hear and consider said assessment and objections thereto, and, after so doing, shall confirm, modify, or set aside said assessments as shall be deemed right and proper. If no objection to the pro rata or the amount thereof is filed, or if the property owners fail to appear in person or by attorney and insist upon the same, the assessment shall be confirmed and made final; and property owners who do not file objection in writing or protest against such assessment shall be held to have consented to the same and forever barred to attack the regularity, validity, or legality of such assessment. Such confirmation and final action by said legislative body shall be done at a single meeting of said body; and it is hereby declared that the provisions of the charters of said cities in reference to the passage of ordinances shall not be applicable to the action of said bodies in levying such assessments as aforesaid, except that such levy or assessment shall be approved by the Mayor; and in the event he refuses to approve or vetoes said levies or assessments, which he shall do as a whole, such levies or assessments shall be passed over his veto in like manner as ordinances or resolutions are passed over such vetoes.

"All such assessments shall be and constitute a lien on the respective lots or parcels of land upon which they are levied, superior to all other liens except those of the State and county and city for taxes. The enforcement of the State, county and city of its liens for taxes on any lot or parcel of land upon which has been levied an assessment for any improvement authorized by this Act, shall not operate to discharge or in any manner affect the city's or town's lien for such assessment; but a purchaser at a tax sale by the State, county or city of any lot or parcel of land upon which said assessment

has been levied shall take the same subject to the lien of such assessment; and if brought by the State, any conveyance of the title thus required or any redemption shall be subject to the lien of such assessment; provided, however, that any error, mistake of name, number of lot, amount, or other irregularity may at any time be corrected; and no such levy or assessment shall ever be declared void or invalid by reason thereof, but the person aggrieved may leave (have) the same corrected by application to the legislative body of said city or town. If in any court of competent jurisdiction any final assessment made in pursuance of this Act is set aside for irregularities, omissions or defects in the proceedings, then the legislative body of such city may, upon recommendation and notice as required in the making of an original assessment, make a new assessment in accordance with the provisions of this Act.''

Section 8 of said Act provides in part as follows:

''Sec. 8. Be it further enacted, That after the legislative body shall have levied said assessments against the property abutting upon such street, highway, avenue or alley, the said city clerk or person designated shall deliver such assessment to tax collector of said city, who shall enter same in a well-bound book, styled ''Special Assessment Book,'' which book shall be so ruled as to conveniently show:

'' (1)   Name of owner of such property.

'' (2)  · The number of lot or part of lot and the plan thereof, if there be a plan.

'' (3)   The frontage of said lot and the depth thereof.

'' (4)   The amount that has been assessed against such lot.

'' (5)   The amount of such installment and the date on which installment shall become due.

''Whenever any installment of any assessment shall become past due for a period of sixty days, it shall be the duty of the tax collector of said city to certify said installment and all other installments of the same assessment to the city attorney of said city, whose duty it shall be to immediately enforce the collection of said installment or installments by attachment levied upon the lot or parcel of ground upon which such assessment was levied,'' etc.

It seems that the engineering department of the city was not adequate to draw the plans and specifications for the work and to supervise it, etc., and that the city employed the firm of J. B. McCalla & Company, of Knoxville, to attend to the engineering features of the improvements, etc. The contracting firm which made the improvements was Snider Brothers & Company.

Said firm of J. B. McCalla & Company about the time of the completion of the work reported to the city as follows:

''To the city council of Lenoir city, Tennessee:

"We herewith report assessment roll for paving complete, with concrete base and asphaltic top, improvement district No. three (3) broadway from the crossing and including the intersection of "B" street, to and including the crossing or intersection of "H" street, in the town of Lenoir city, Tennessee, as authorized by ordinance and based upon the plans and specifications adopted and the contract of Snider Brothers & Company, for said work and we certify that such assessment is in pursuance to the provisions of the statutes and ordinances governing same."

We will not quote all of the assessment roll or list which accompanied said report because it is in the nature of a tabulation of all the property owners, etc., in the district, but we will quote enough of it to show what it was, as follows:

"Final assessment roll or list of property owners and assessments on improvement district No. three (3) of the town of Lenoir city, Tennessee broadway from "B" street to and including the intersection of "H" street:

| "Name Property Owner | Front Feet | Intersection Feet | Assessment Paving Proper | Assessment Intersection | Engineering Expense | Total Assessment |
|---|---|---|---|---|---|---|
| W. H. Goodwin | 50.0 | 189.0 | $337.92 | $406.20 | $43.10 | $787.22 |
| Will Ellison | 50.0 | 50.0 | $337.92 | $ 45.21 | $11.40 | $394.53 |

. . . . . . ,,

Upon receiving the foregoing assessment list or roll, the same was filed in the office of the city recorder and the city caused notices to be published in a newspaper in Lenoir city, in part as follows:

"Important notice to property owners.

"To the property owners and parties interested in or abutting on improvement district No. three . . . in the town of Lenoir city, Loudon county, Tennessee, comprising that part of certain avenues and alleys as hereinafter designated, to-wit:

"Improvement district No. 3, broadway from and including the crossing or intersection of "B" street to and including the intersection of "H" street on the west.

. . . . . .

"You are herewith given notice according to statute, that final assessment roll or list has been completed for the above named improvement district and that same is now on file in my office for your inspection and that the improvement done, paving with concrete base with asphaltic top, or the last of same has been finally tabulated and determined and that Friday the 24th day of November, 1922, at six o'clock p. m., has been designated by the city council as the time when all abutting property owners, parties interested, and others, shall appear and show cause, if any they may have, why said assessment should not be made final.

"Done by order of the city council of Lenoir city, Tennessee, this the 7th day of November, 1922.

"S. H. Monger, Recorder of Lenoir city, Tennessee."

On November 24, 1922 at six p. m. the city council met at the city hall and the minutes of its meeting are as follows:

"Lenoir city council met in call session, at the city hall, Lenoir city, Tennessee, on the 24th day of November, 1922, at six o'clock p. m., Mayor Z. B. Wilson present and presiding. Upon roll call the following aldermen were present, to-wit: Ballew, Fine, Lee, Scarbrough, Shannon and Wells. The mayor declared a quorum present. The said meeting being in pursuance to an advertised meeting of property owners and parties interested in or abutting on improvement district No. 3 . . . . in the town of Lenoir city, Loudon county, Tennessee, the same being published in the Lenoir City News, Thursday, November 9, 1922. The said notice was read to the city council and all interested parties present by the city attorney, and said notice being as follows:

(Here followed the notice which we have just quoted, and the same will not be quoted again.)

"The assessment roll or list of improvement district No. 3 was taken up and protest or objection, if any, called for, whereupon the following parties filed objection in writing:

"K. B. Hensley, J. Allen Smith by K. B. Hinsley, C. E. Price, E. C. Stout, J. E. Callaway, D. West, G. L. Lee, D. E. Goodman, W. F. Spoon, John Duff heirs and Mrs. Mattie Burns. Whereupon motion was duly made by alderman Fine, seconded by alderman Shannon, that the said assessment be approved.

"Mayor Wilson ordered the vote taken on the motion and upon roll call the following vote was recorded on the passage of the same, to-wit:

"Ballew (aye) Fine (aye) Scarbrough (aye) Shannon (aye) Wells (aye) Lee (no).

"Mayor Wilson declared the motion carried and the said assessment approved and that the said assessment roll be filed with the city treasurer for collection.

"There being no further business to come before the council motion was duly made, seconded and carried to adjourn."

"S. H. Monger, recorder. Z. B. Wilson, mayor."

The list or roll was filed and recorded in the office of the city treasurer, and was (as required by section 8 of said Act) entered by said city treasurer in a well ruled and well bound book, which he kept in his office, etc.

So it appears that the city's employed engineers made out and turned over to the city an apportionment and assessment list in proper form; that said list was put on file in the city recorder's office where it was open to inspection by the interested property owners; that proper notice was published in a newspaper in Lenoir city that

said assessment list or roll was on file in the office of said city recorder and was open for inspection, etc., and that November 24, 1922 at six p. m. had been designated as the time for interested property owners to appear before the city council and show cause, if any they had, why said assessment should not be made final; that said meeting of the city council was held at the time and place stated in said notice; that said assessment roll or list was taken up by the council and objections called for; that some of the interested property owners (but not the defendant, Ellison) appeared and filed written objections to said assessment which was, of course, before the said city council for consideration at the time; 'that said city council manifestly regarded that said objections were not well taken; that a motion before said city council was made and carried that said assessment roll or list be approved; that after a vote was taken the mayor declared said motion carried and the said assessment approved and that the said assessment roll be-filed with the city treasurer for collection; that said assessment roll was filed with and recorded by said city treasurer and was entered by him in a well ruled and well bound book; that said city treasurer proceeded to collect said assessments, etc.

It is true that no ordinance or resolution was passed making an apportionment and assessment, and that said assessment list or roll was not copied into the minutes of the council meeting—the minutes simply reciting that "the assessment roll or list of improvement district No. 3 was taken up," etc. But, as stated, said assessment roll or list which purported on its face to be an apportionment and assessment had been on file and open for inspection in the city recorder's office; it was actually and in fact before the city council and in its hands at the meeting, and after being approved it was in fact filed and recorded in the city treasurer's office and was entered by him in a well ruled and well bound book which he kept, etc.

It seems to us that the foregoing constituted a sufficient compliance with sections 4 and 6 of said Act, and that this holding is not in conflict with the opinion of this court in the case of City of Harriman v. H. M. Carr upon which counsel for Mr. Ellison rely. It seems clear that the provision of section 6 of said Act which states that "it is hereby declared that the provisions of the charters of said cities in reference to the passage of ordinances shall not be applicable to the action of said bodies in levying such assessments as aforesaid," etc., shows that the legislature did not intend that the action of city governing bodies in making such apportionments and assessments should be formal. All that is necessary is that said governing bodies, in some manner and after notice and an opportunity to the interested property owners to file objection and be heard, make an apportionment and assessment in an open meeting—all of which we think was done in this case.

It results that in our opinion the decree of the Chancellor dismissing complainant's bill at its cost was erroneous, and the same will be reversed. A decree will be entered sustaining the assessment against defendant's property and declaring said assessment and interest and the costs of the cause including the appeal a lien on defendant's property, etc. But no personal judgment against the defendant will be rendered as the proceeding is not properly a proceeding in personam against him but is in rem against his abutting property.

All concur.